In re Leon R. MIGUEL and Placida S. Miguel, Debtors.

PACO FINANCIAL, INC., a California corporation, Linden Financial, Inc., a California corporation, Plaintiffs,

v.

Leon R. MIGUEL and Placida S. Miguel, Leonidas, Inc., a corporation, Defendants.

Bankruptcy No. 281–03688–D–11. Adv. No. 281–1083.

United States Bankruptcy Court, E.D. California.

June 1, 1983.

Eustice & Sines by John B. Sines, Los Altos, Cal., for plaintiffs.

Oliver J. Northup, Jr., Woodland, Cal., for defendants.

## MEMORANDUM OPINION AND DECISION

LOREN S. DAHL, Bankruptcy Judge.

October 2, 1981, Placida S. Miguel and Leon R. Miguel filed a joint voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code of 1978. On November 4, 1981, Paco Financial, Inc., and Linden Financial, Inc. [plaintiffs hereinafter], filed an adversary "Complaint for Reclamation" against Placida Miguel and Leon Miguel and against Leonidas, Inc., a corporation owned solely by Leon and Placida Miguel.

The primary allegation of plaintiffs' complaint is that Leonidas, Inc., transferred title to real property in Yolo County designated in these proceedings as the Aldersen Convalescent Hospital and sometimes Countryside Nursing Home [hereinafter The Hospital] from Leonidas, Inc., to the Miguels in their individual capacities. The Plaintiffs allege that this transfer of title took place for the sole purpose of hindering and delaying plaintiffs in their efforts to foreclose on The Hospital on which they held a second deed of trust. Plaintiffs seek relief from this Court in the form of an order directing all defendants to deliver the real property to the court or the court's agent to be held for a Trustee's Sale together with an award of attorney's fees, costs, interest, late charges, all rents received from the property, and exemplary and punitive damages.

Prior to the date of trial, Leon Miguel died. Since that time Placida Miguel has been before the court in her capacity as an individual and as the executrix of the will of Leon Miguel. Trial of the matter was had on March 2, 1982, and the matter was taken under submission by the court on that date. The pleadings of the parties as well as the testimony and documentary evidence presented at trial disclosed the following facts.

## STATEMENT OF FACTS

Leon and Placida Miguel formed Leonidas, Inc., in 1962 as a viable corporate entity whose primary business purpose was to own and operate convalescent hospitals. Since the inception of Leonidas, Inc., to the time of Leon Miguel's death, October 24, 1981, Leon and Placida Miguel were the sole shareholders, directors, and officers of the corporation. Since Leon Miguel's death, Placida Miguel has continued in her corporate capacity and has functioned as the

executrix of Leon Miguel's will. Title to The Hospital, which is the subject of the present controversy, was held by Leonidas, Inc., until October 2, 1981, when Leonidas, Inc., transferred title to The Hospital to Leon and Placida Miguel in their individual capacities.

Leon and Placida Miguel also owned two ranches whereon they conducted farming operations in their individual capacities. These two properties are known as the Lower Honcott Road Ranch and the Central House Road Ranch.

The present controversy between the plaintiffs and Placida Miguel arises from the following scenario of events.

During the year of 1979, the Miguels approached Mr. Frank Galli, Sr., to procure the necessary financing for that year's prune crop. Mr. Galli received a security interest in the crop and was fully paid at the year end from the crop proceeds. In 1980, Placida Miguel again approached Mr. Galli, Sr., to request a loan for the family farming operations. The 1980 loan was consummated on March 12, 1980 by Paco Financial, Inc., Frank Galli, Sr., the president and sole shareholder, for one-half the loan amount, and Linden Financial, Inc., the sole shareholder being Frank C. Galli, Jr., son of Frank Galli, Sr., for the other one-half. After initially agreeing to loan the money to the Miguels and taking back a security interest in the 1980 prune crop, as was successfully done in 1979, Mr. Galli, Sr., demanded additional security in the form of a deed of trust on The Hospital. The 1980 loan was made to Leonidas, Inc., as owners of The Hospital, with the hospital and the prune crop as security. This transaction, as structured by Mr. Galli, Sr., is of great interest to the court in light of his very direct testimony that since November of 1979 the usury limitations were not applicable to his loan since it was secured by real property. The only reason given for the subsequent demand for additional security was a vague assertion of an inability to fund the loan without it, but no change in circumstances from the prior year, when such a loan had been made, were shown to the court.

Thus the loan was made by the plaintiffs to Leonidas, Inc., who executed a promissory note for $82,500.00 at 16 percent interest, secured by a deed of trust on The Hospital. However, Placida Miguel testified that the loan was always treated as a loan to her and her husband as individuals; that Leonidas, Inc., never received the loan proceeds; and with the crop assignment given by them in their individual capacities, as the primary security for the loan. On cross-examination, Frank Galli, Sr., testified that it was his expectations that the loan would be repaid from the assignment of payments on the prune crop, as had occurred in 1979.

The actual loan transaction between the plaintiffs and Leonidas, Inc., is indicative of the unequal bargaining positions of the parties. In March of 1980, plaintiffs loaned $82,500.00 to the Miguels. The transaction was negotiated solely by Mr. Frank Galli on behalf of the plaintiffs. Paco Financial, Inc., loaned one-half of the loan amount and Linden Financial, Inc., loaned the remaining one-half of the loan amount. The plaintiffs charged a "loan brokerage fee" of 20 percent for making the loan which came to an amount of $16,500.00. This amount was taken one-half by PACO and one-half by Linden before the loan proceeds were transmitted. Thus, the Miguels actually received only $66,000.00.

As evidence of this obligation, Leonidas, Inc., became the payor on a straight note in the amount of $82,500.00. This note accrued interest at the rate of 16 percent per annum. It was payable to "Paco Financial, Inc., as to an undivided ½ interest; and Linden Financial, Inc., as to an undivided ½ interest".

When the prune crop of the Lower Honcott Ranch was sold, the plaintiffs received $58,389.00. Of this amount, $48,470.55 was credited to principal on the loan. (Plaintiffs' Exhibit 8—Plaintiffs' Loan Payment Ledger.) This left a balance due and owing on the note of $34,510.55. When the Miguels were unable to repay this amount, the plaintiffs filed notice of default and elec-

tion to sell under their deed of trust on The Hospital. The notice of default was recorded on June 11, 1981, by the plaintiffs and on September 17, 1981, a notice of trustee's sale was recorded.

On October 1, 1981, Leonidas, Inc., conveyed title of The Hospital to Leon and Placida Miguel by corporation grant deed which was recorded October 2, 1981. Placida Miguel stated in her testimony that there was no consideration given for this transfer. However, her testimony indicated that the reason for the transfer was to strengthen their ability to repay the plaintiffs, as well as to protect the corporation.

## ISSUE

The primary issue is whether the transfer of title to The Hospital from Leonidas, Inc., to the Miguels in their capacities as individuals, was made for the purpose of hindering, delaying and defrauding their creditors, in particular, the plaintiffs.

## DISCUSSION

In his deposition, Frank Galli, Sr., testified that in February 1980 Mrs. Miguel called him, advising that she was in need of funds and "I said, no way could I interest anybody in a loan to them as individuals or on that property". (Page 11, line 5.) Mr. Galli also testified in his deposition that the crop assignment was extra security on the loan that was made on the convalescent hospital. (Page 12, lines 2–8.) Neither of these statements are worthy of belief and are contrary to the credible testimony of Mrs. Miguel. It seems quite obvious to the court that the satisfactory experience from the loan in 1979 must have been an important item of consideration which caused Mr. Galli, Sr., (Paco), together with his son (Linden Financial, Inc.) to make the 1980 loan.

The court believes and so finds that plaintiffs agreed to make the 1980 loan to defendants as needed in their farming operations. After the initial agreement to make the loan, the plaintiffs requested a deed of trust on The Hospital property. Because title to that property was vested in Leonidas, Inc., it was necessary that the officers of Leonidas, Inc., Mr. and Mrs. Miguel, sign the promissory note and deed of trust.

Mr. Galli, Sr., testified that he expected they would be paid from the crop proceeds on which they had an assignment; that he had in mind that the crop loan of the prior year had worked out very well and that he got fully paid from crop proceeds.

He also testified that since November 1979, loans secured by real property were removed from the Usury Statute and that licensed real estate brokers could charge loan fees even if they were loaning their own money.

It may very well be that the true reason plaintiffs requested the deed of trust in addition to the crop assignment was not as additional security, but rather as an attempt to bring the loan transaction within the exceptions to the ten percent interest maximum as proscribed by Article 15, Section 1, of the California Constitution. (Commonly called the Usury Law.)

He testified that he had a real estate broker's license and it was lodged with Paco Financial, Inc. The last amendment to this section of the California Constitution became effective November 6, 1979, consistent with Mr. Galli's testimony. The ten percent interest maximum on a loan for personal, family or household purposes as proscribed in Section 1 of said Article was amended to exclude loans for *purchase, construction* or *improvement* of real property from that Section.

Section 2 then fixed the maximum interest rate for all other loans (including loans on real property) at the higher of ten percent or five percent plus the Federal Reserve Bank discount rate to member banks. Section 2 also excluded from the Sections' maximum ten percent rate *any loan made or arranged by a licensed real estate broker and secured in whole or in part by a lien on real property.*

The note was for one year; interest at 16 percent on $82,500.00 amounts to $13,200.00. Adding to that the $16,500.00 charged as a broker's fee for which there is no *recitation*

*of services* rendered would total $29,700.00 as the interest or charge for the use of the money loaned for one year. This equals a rate of 36 percent per annum, well in excess of the maximum provided in Article 15, Section 2, of the California Constitution.

Further, plaintiffs received $58,389.00 from the crop assignment, a portion of which was applied for foreclosure costs, $750.00 to late charges at the rate of $50.00 per month, $8,800.00 to interest, $48,470.55 to principal.

Additionally, defendants had paid them $5,500.00 in interest prior to the harvest of the crops.

In other words, plaintiffs have thus far received $14,300.00 in interest and $16,500.00 in loan charges, for a total of $30,800.00, which amounts to 37⅓ percent of the entire loan. They claim to be owed an additional $34,510.00 as of April 12, 1981, plus interest thereon at 16 percent annum.

However, the issue of usury is not before this court in this proceeding and no ruling will be made thereon. The above discussion is relevant to understand the entire transaction, security interest obtained, and the subsequent conduct of the parties.

It appears, and the court finds, that debtors had a legitimate purpose in causing a conveyance of title of The Hospital real property from their corporation, Leonidas, Inc., to themselves. That purpose was to strengthen their ability to pay creditors. From the evidence presented, there was no intent on the part of Mr. and Mrs. Miguel to hinder, delay or defraud any creditors, particularly plaintiffs. In fact, by conveying the property to themselves it became subject to the jurisdiction of this court when they subsequently filed their Chapter 11 petition, thereby making it available for administrative and creditor application subject to the rights of plaintiffs.

The plaintiffs have not had their substantive rights injured in any manner that exceeds the rights of debtors to avail themselves of the protections of the Bankruptcy Laws.

Accordingly, the judgment must be entered for the defendants.

This Memorandum Opinion and Decision shall constitute Findings of fact and Conclusions of Law. Counsel for the defendants is requested to prepare and submit a Judgment consistent herewith.